# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHNATHAN AARON BROWN,

       Petitioner,

                                        CASE NO. 2:11-CV-10764

v.                             HONORABLE DENISE PAGE HOOD

STEVE RIVARD,

       Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS,
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
## GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

## I.  INTRODUCTION

This is a habeas case brought under 28 U.S.C. § 2254.  Petitioner Johnathan

Aaron Brown was convicted of second-degree murder, MICH. COMP. LAWS § 750.317,

felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a

firearm during the commission of a felony (felony firearm), second offense, MICH.

COMP. LAWS §  750.227b.  He was sentenced to concurrent terms of nine to twenty

years in prison for the second-degree murder conviction and one to five years in

prison for the felon-in-possession conviction.  He received a consecutive term of five

years in prison for the felony firearm conviction with 150 days of jail credit.  In his

pleading, Petitioner alleges that he was denied effective assistance of counsel due to trial counsel's failure to move to suppress his statement to the police. Respondent argues in an answer to the petition that the petition should be denied. For the reasons stated below, the Court denies the petition for a writ of habeas corpus and declines to issue a certificate of appealability.

## II.  FACTS AND PROCEDURAL HISTORY

### A.  The Charges and Trial Testimony

Petitioner was charged with first-degree (premeditated) murder, felon in possession of a firearm, and felony firearm, second offense. The charges arose from the fatal shooting of Arnado Wilkins in Detroit, Michigan during the early morning hours of August 25, 2007. The evidence at Petitioner's jury trial in Wayne County Circuit Court established that Arnado drove a black Cadillac Catera to Erica and Christina Dortch's home on Flanders Street in Detroit about 2:00 a.m. on August 25, 2007. Arnado's cousin, Eric Owens, accompanied Arnado to Flanders Street. Arnado was drunk, and he had argued with his girlfriend, Shandalyn Wilson, earlier that night.

When Arnado and Eric arrived at the Dortch residence on Flanders Street, Arnado got out of the car and asked Christina's Dortch's daughter Erica and Erica's friend Marshariea Johnson whether "Crystal" was there. Arnado was trying to locate Christina ("Chrisie") Dortch, who was Shandalyn Wilson's friend, to determine where

2

Shandalyn was. In his drunken state of mind, he mispronounced Christina's name and asked for "Crystal." Christina was inside the house sleeping, but Erica was sitting on the porch with Marshariea. Erica told Arnado that no one named Crystal lived there, but that he could try the house next door where several people were standing outside.

Arnado proceeded to the house next door at 14851 Flanders Street and asked for "Crystal." He and the people standing around at 14851 Flanders Street started arguing with each other and calling each other nasty names. Arnado then returned to the Cadillac Catera, but he and the people at 14851 Flanders Street continued to argue and insult each other. Arnado told the crowd at 14851 Flanders Street to "[s]pray this bitch up." Eric testified that he knew that to mean, "[l]ike shoot the car up." Eric encouraged Arnado to leave the area, but Arnado told Eric not to embarrass him or make him look weak in front of the men at 14851 Flanders Street.

Arnado then instructed Eric to get out of the car, and the men in front of 14851 Flanders Street told Eric to take Arnado home. Eric responded that he could not control Arnado. At that point, Petitioner stepped away from the crowd and toward Arnado. He pulled a handgun out of his waistband and fired two gunshots. Eric ran to Erica Dortch's house where he called Arnado's brother on the phone and told him what had happened. He then ran home. Meanwhile, Arnado drove off in the Cadillac

3

Catera and called his brother Craig Wilkins. Arnado did not say anything to Craig, and when Craig returned his phone call, there was no answer. Craig subsequently found Arnado's car crashed into a building about two blocks away from the Flanders Street address where the shooting had occurred. Arnado was seated in the Cadillac Catera, unresponsive and bleeding. Craig called the police, who responded to the scene.

Witnesses testified that Arnado was not known to carry a gun and that there was no gun in the car he was driving. The medical examiner testified that Arnado died of multiple gunshot wounds and that the manner of death was homicide.

Petitioner's name came up during an investigation of the incident, and Eric testified that, about a week after the shooting, he viewed an array of six photographs. He informed the police that the fifth photograph, which was a picture of Petitioner, looked like the person who shot Arnado.

Officer Scott Shea testified that, following Petitioner's arrest, he advised Petitioner of his constitutional rights and then interviewed him. Petitioner waived his constitutional rights and, during the question-and-answer portion of the interview, he initially denied being present during the shooting on Flanders Street on August 25, 2007. Although he admitted to stopping by his brother's house on Flanders Street "for a hot minute" that night, he denied arguing with anyone there or talking with a man

4

seated in a black Cadillac.  He also denied having a gun with him at the time.

Later in the interview, Petitioner motioned for a pen and indicated that he wanted to write something.  Petitioner then wrote that a man had come over to the Flanders Street house looking for Crystal.  He told the man that no one by the name of Crystal stayed there.  The man made some smart remarks and threatening comments.  He (Petitioner) asked the man to leave and told him that he did not want any trouble.  The man walked to his car and threatened to kill the group of people that had gathered at the house.  After the man got in his car, he reached under the seat. Petitioner then shot at the car door and reached inside the car window in an attempt to knock an object out of the man's hand.  He fired a second time because the man was prepared to start shooting.

The parties stipulated at trial that Petitioner had been convicted of a prior felony and was not eligible to possess a handgun on August 25, 2007.  Petitioner then testified that he was present at his brother's house at 14851 Flanders Street about 2:30 a.m. on August 25, 2007.  He claimed that a man walked into the house looking for a girl named "Crystal."  As the man walked outside, he threatened to kill the people at the house.  The man then got in his car, pulled out a gun, and threatened "to spray this bitch up."  Petitioner fired his gun at the car door to scare the man and then reached inside the car window in an effort to snatch the gun out of the man's hand.

During the struggle, Petitioner's gun fired. He knew that he was not supposed to possess a gun, but he was afraid and he did not want to get shot or to have the people standing next to him get shot.

Petitioner testified that, during his interview with Officer Shea, he asked for a lawyer several times, but Officer Shea informed him that he did not need a lawyer and that he had to make a statement. Petitioner also testified that, during the question-and-answer portion of the interview, he did not know that the victim had died. He thought that he had been arrested for having a gun. After he learned that the victim had died, he decided to write out a statement.

There were no other defense witnesses besides Petitioner. The defense theory was that Petitioner killed the complainant in self defense, believing that his life, or the lives of his loved ones, were in danger.

## B.  The Verdict, Sentence, and Appeal

On January 31, 2008, Petitioner's jury found him guilty of second-degree murder (as a lesser-included offense of first-degree murder) and guilty, as charged, of felon in possession of a firearm and felony firearm, second offense. On February 28, 2008, the trial court sentenced Petitioner to concurrent terms of nine to twenty years in prison for the murder conviction and one to five years in prison for the felon-in-possession conviction. Petitioner received a consecutive sentence of five years in

6

prison for the felony firearm conviction.

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals, raising the same claim that he presents in his habeas petition. At Petitioner's request, the Court of Appeals remanded his case for a hearing and decision on whether Petitioner was denied effective assistance of trial counsel due to counsel's failure to move for suppression of Petitioner's statement to the police as involuntary.[1] Petitioner and his trial attorney testified at the evidentiary hearing. The trial court stated at the conclusion of the hearing that it thought Petitioner's statement to the police was voluntary, knowing, and understandingly made. The court did not believe that the police coerced Petitioner to make his statement. The court also stated that it did not believe trial counsel's performance was deficient or prejudicial. The court claimed that it would not have suppressed Petitioner's statement if counsel had asked to have the statement suppressed.

Following remand, the Michigan Court of Appeals concluded that the trial court did not err in finding that Petitioner acted voluntarily in making his statement to the

---

[1]

In Michigan, "[a] defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the appellate courts . . . ." *People v. Ginther*, 390 Mich. 436, 443-44; 212 N.W.2d 922, 925 (1973).

police. The Court of Appeals affirmed Petitioner's convictions in an unpublished, *per curiam* opinion. *See People v. Brown*, No. 285830, 2009 WL 332333264 (Mich. Ct. App. Oct. 15, 2009). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which denied his application because it was not persuaded to review the issue. *See People v. Brown*, 485 Mich. 1104; 778 N.W.2d 260 (2010) (table).

### C. The Habeas Petition and Responsive Pleading

Petitioner, through counsel, subsequently filed his federal habeas petition, raising the following claim as a basis for relief:

> Mr. Brown's Sixth Amendment right to effective assistance of counsel was violated where trial counsel never considered challenging the admissibility of Mr. Brown's confession, even though the material counsel reviewed before trial provided ample notice that officers obtained Mr. Brown's confession under coercive circumstances and the state needed the confession to identify Mr. Brown as the person who shot Mr. Wilkins.

Respondent argues that the petition should be denied because Petitioner's confession was not coerced and the state appellate court's conclusions—that the confession was voluntary and that trial counsel was not ineffective—was not an unreasonable application of Supreme Court precedent. Respondent also asserts that any error in admitting the confession was harmless error.

## III. STANDARD OF REVIEW

8

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Pursuant to the AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996). Because Petitioner raised his claim on direct appeal and because the Michigan Court of Appeals reached the merits of his claim, AEDPA deference applies here. *Henness v. Bagley*, 644 F.3d 308, 319 (6th Cir. 2011) (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)), *cert. denied*, __ U.S. __, 132 S. Ct. 1970 (2012).

"A state court's decision is 'contrary to' [the Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at

9

a result different from [that] precedent.' " *Mitchell v. Esparza*,  540 U.S. 12, 15-16 (2003) (*per curiam*) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of §2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams v. Taylor*, 529 U.S. at 413); *see also Bell v. Cone*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.' " *Wiggins v. Smith*, 539 U.S. at 520-21 (end citation omitted); *see also Williams v. Taylor*, 529 U.S. at 409.  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.' " *Renico v. Lett*, 559  U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. at 333, n. 7, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).

The Supreme Court recently held that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams v. Taylor*, 529 U.S. at 412; *Lockyer v. Andrade*, 538 U.S. at 71-72.  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S. Ct. at 785.  It "does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell v. Esparza*, 540 U.S. at 16 (stating that "a state court need not even be aware of our precedents").  "[W]hile the principles of 'clearly established law' are to be determined solely by Supreme Court

11

rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003), and *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002)).

A state court's factual determinations are presumed correct on federal habeas review unless the habeas petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Habeas review, moreover, is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, __ U.S. __, __, 131 S. Ct. 1388, 1398 (2011).

## IV. ANALYSIS

Petitioner asserts that he is entitled to habeas relief because he was deprived of his constitutional right to the effective assistance of counsel. In particular, he claims that trial counsel failed to challenge the admissibility of his confession, even though the material that counsel reviewed before trial provided ample notice that the police obtained his confession under coercive circumstances and that the state needed the confession to identify him as the shooter. Respondent contends that this claim lacks merit and does not warrant habeas relief.

The Michigan Court of Appeals held that trial counsel was not ineffective for

12

declining to move to suppress Petitioner's statement to the police during the custodial interrogation because the written confession was voluntary and was made after a valid waiver of Petitioner's Fifth Amendment right to counsel. The Michigan Court of Appeals also held that trial counsel used Petitioner's statement as part of his trial strategy to demonstrate consistency in Petitioner's claim of self-defense.

## A.  Clearly Established Federal Law

### 1.  *Strickland v. Washington*

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hodges v. Colson*, __ F.3d __, __, 2013 WL 4414811, at *12 (6th Cir. Aug. 14, 2013). A petitioner can show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

13

been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

A court's review of counsel's performance must be "highly deferential." *Id*. at 689.  Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).  "The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable - a substantially higher threshold.' " *Id*. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. at 473).

Trial counsel testified at the post-conviction hearing that he did not consider moving to suppress Petitioner's statement because it was his intent to have Petitioner testify and to argue self defense.  He claimed that Petitioner's statement to the police was consistent with his and Petitioner's discussions about the case and their defense to the charges.  He did not think the statement was negative, incriminating, or harmful to their case, and he did not believe that he had a sufficient basis for moving to suppress it.

### 2.  Confession

To determine whether trial counsel was ineffective for failing to file a motion

14

to suppress Petitioner's statement to the police, the Court must first consider whether

Petitioner's statement was coerced.  A confession is admissible if it is

> "the product of an essentially free and unconstrained choice by its maker[.]  If it is, if [the suspect] has willed to confess, it may be used against him.  If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process."

*Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)).

A confession is considered involuntary if (1) the police extorted the confession

by means of coercive activity; (2) the coercion in question was sufficient to overbear

the will of the accused; and (3) the will of the accused was in fact "overborne *because*

of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th

Cir. 1988) (emphasis in original).  The ultimate question is "whether, under the

totality of the circumstances, the challenged confession was obtained in a manner

compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S.

104, 112 (1985).  Factors to consider include:  the presence or absence of police

coercion (a "crucial element"); the length and location of interrogation; continuity of

the interrogation; the suspect's maturity, education, physical condition, and mental

health; and whether the suspect was advised of his or her right to remain silent and to

have counsel present during the interrogation. *Withrow v. Williams*, 507 U.S. 680,

15

693-94 (1993).[2]

"[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment," *Colorado v. Connelly,* 479 U.S. 157, 167 (1986), and, in a habeas case, "the burden of proving that a confession was involuntary rests with the petitioner." *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987) (citing *Jurek v. Estelle*, 623 F.2d 929, 937 (5th Cir. 1980)). "[V]oluntariness need only be proven by a preponderance of the evidence." *Id*. (citing *Lego v. Twomey*, 404 U.S. 477 (1972)).

## B.  Application

The record indicates that the police arrested Petitioner on Friday, September 21, 2007.  On Sunday evening, September 23, 2007,  Officer Shea transported Petitioner from one police precinct to another precinct and then interviewed Petitioner in a cellblock area.  It is undisputed that Officer Shea informed Petitioner of his

---

[2]

The right to remain silent and the right to counsel during a custodial interrogation were explained in *Miranda v. Arizona*, 384 U.S. 436 (1966), where the Supreme Court held that, prior to a custodial interrogation, the suspect

> must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Id*. at 444.  Of course, the suspect "may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently."  *Id*.

16

constitutional rights before interrogating him.   Petitioner, in fact, read his constitutional rights aloud and placed his initials next to each one of the rights on the notification-of-rights form to show that he understood them.

The interrogation lasted about two hours.  Petitioner was twenty-nine years old at the time.  He was an electrician with three years of college education and a prior felony conviction.  Although he apparently was served only juice and crackers during his detention, he did not request food or drink during the interrogation, and he did not ask to use the restroom.  He did not appear to be under the influence of drugs or alcohol, and even though he was a little upset and agitated about being detained for two days, he was not hostile toward Officer Shea.

Officer Shea testified at trial that he did not threaten Petitioner, nor promise him anything, to induce his statement and that he did not say anything to cause Petitioner to make a written statement.  According to Officer Shea, Petitioner volunteered to write a statement in his own words, and Petitioner signed his name under a statement on the notification-of-rights form that read:

> I understand that these are my rights under the law.  I have not been threatened or promised anything.  And I now desire and agree to answer any questions put to me or make a statement.

Petitioner himself admitted at trial that Officer Shea did not promise him anything in exchange for his statement, nor threaten him. Petitioner even

17

acknowledged that his statement was voluntary.  Although at one point he testified that Officer Shea had informed him that he was implicated in the crime and that he had to make a statement, he also claimed that he had wanted to write a statement in his own words so that Officer Shea would have a better understanding of what happened on the night of the shooting.

At the post-conviction hearing in state court, Petitioner testified that his written statement was the truth and that Officer Shea did not tell him what to write.  And trial counsel testified at the hearing that Petitioner never informed him that he was forced to write a statement or deprived of food and drink.

The facts, as summarized above, indicate that Petitioner's will was not overborne and that his capacity for self-determination was not impaired during his custodial interrogation.  Petitioner nevertheless makes several specific allegations to support his contention that his confession was involuntary.

### 1.  Isolation

First, Petitioner alleges that he was pressured to make a statement as a result of more than two days in solitary confinement.  However, during the question-and-answer portion of Petitioner's interrogation, he denied being present during the shooting, and even though his subsequent handwritten statement was inculpatory, he testified at trial that the statement was voluntary.  The Court therefore rejects

18

Petitioner's allegation that his admissions were the result of his solitary confinement in jail.

### 2. Notice of the Charges

Next, Petitioner alleges that he was not notified of the charges against him. The trial court opined at the post-judgment evidentiary hearing that Petitioner must have been aware that he was charged with murder because he knew he shot someone and because it was unreasonable to think that his family and friends did not tell him that the man whom he shot had died.

The trial court's factual findings, including its credibility determination at the hearing on Petitioner's motion to suppress his confession, is presumed correct unless Petitioner can rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Brown v. Jackson*, 501 F. App'x 376, 377 (6th Cir. 2012).[3]  At trial,

---

[3]

 *See also McPherson v. Woods*, 506 F. App'x 379, 388-389 (6th Cir. 2012), stating that

> [t]he law of the Supreme Court, the Sixth Circuit, and the state of Michigan all call for deference to trial judges on matters of witness credibility . . . . *See Felkner v. Jackson*, __ U.S. __, __, 131 S. Ct. 1305, 1307, 179 L. Ed.2d 374 (2011) ("The trial court's [credibility] determination is entitled to great deference, and must be sustained unless it is clearly erroneous.") (internal citation and quotation marks omitted); *Fields v. Bagley*, 275 F.3d 478, 485 n. 5 (6th Cir. 2001) ("When considering a motion to suppress, the trial court is the primary judge of the credibility of witnesses and the weight of the evidence. If the trial

Petitioner testified that he first learned of the victim's death when Officer Shea interrogated him, but at the post-conviction evidentiary hearing, he testified that he learned of the victim's death a few weeks after the shooting incident and before he was arrested.  It therefore appears that he was aware of the charges against him before he was interrogated.  He has not clearly and convincingly rebutted the state court's factual determination that he had notice of the charges against him.  The Court therefore rejects Petitioner's claim that he was not notified of the charges.

### 3.  Request for Counsel

Petitioner asserts next that Officer Shea refused to honor his request for counsel even though he asked for an attorney several times.  "The [Supreme Court's] decision in *Edwards v. Arizona*, 451 U.S. 477, 482  (1981), requires the police to immediately cease questioning a suspect if he invokes the right to counsel at any time."  *Henness v. Bagley*, 644 F.3d at 320.

Petitioner testified at trial that Officer Shea had said he did not need a lawyer and that he had to make a statement.  Officer Shea, on the other hand, testified that

---

court's findings are supported by competent and credible evidence, then the appellate court must accept them.") (internal citation omitted); *People v. Sexton*, 461 Mich. 746, 609 N.W.2d 822, 825 (2000) ("[I]f resolution of a disputed factual question turns on the credibility of witnesses or the weight of the evidence, we will defer to the trial court, which had a superior opportunity to evaluate these matters.").

Petitioner did not request counsel, and the trial court implied at the post-conviction evidentiary hearing that it did not believe Petitioner requested an attorney. The court noted that Petitioner did not mention he wanted an attorney when he was advised of his constitutional rights and that it was not logical to believe Petitioner would make a statement if he knew he had a right to an attorney and professed to want one. The trial court also thought it was improbable that Officer Shea would deny Petitioner's request for an attorney and then allow him to write a statement in his own handwriting.

The record supports the trial court's implicit conclusion that Petitioner waived his right to counsel. Petitioner acknowledged his right to counsel on the notification-of-rights form and then signed a statement indicating that he was willing to answer any questions or to make a statement. Therefore, it was not unreasonable for the Michigan Court of Appeals to conclude that the trial court's factual finding (that Petitioner waived his constitutional right to counsel) was not clearly erroneous.

### 4. Delay in Arraignment

Petitioner's final allegation is that his confession was involuntary because he was not arraigned within forty-eight hours of his arrest. The Supreme Court has held that suspects arrested without a warrant generally must receive a probable-cause hearing within forty-eight hours of their arrest, *Riverside v. McLaughlin*, 500 U.S. 44,

56 (1991), and it is undisputed that Petitioner was arrested without a warrant and detained more than forty-eight hours before he had any type of hearing.

In Michigan, however, the delay between an arrest and arraignment is only one factor in determining the voluntariness of a confession. *See People v. Cipriano*, 431 Mich. 315, 333-34; 429 N.W.2d 781, 790 (1988). A "delay in arraignment is not, in itself, a sufficient basis for suppressing a statement." *Brown v. Jackson*, 501 F. App'x 376, 379 (6th Cir. 2012).

The record, moreover, indicates that the delay in Petitioner's arraignment was due to the fact that Scott Shea, the officer in charge of the case, was out of town when Petitioner was arrested. There is no indication that the police delayed arraigning Petitioner to acquire more evidence against him or to induce a confession. And because Petitioner offered to make a handwritten statement in which he admitted to shooting the victim, there is not a reasonable probability that his statement would have been suppressed if trial counsel had moved to suppress the statement on the ground that Petitioner was detained more than forty-eight hours before he confessed to shooting the victim. *Cf. Norris v. Lester*, __ F. App'x __, __, 2013 WL 4516081, at *9 (6th Cir. Aug. 26, 2013) (granting habeas corpus relief after concluding there was a reasonable probability that the confession would have been suppressed if Norris's appellate counsel had raised the *McLaughlin* issue, because there was evidence that

22

officers detained Norris to gather additional evidence and because there was no alternative explanation for Norris's prolonged detention).  The Court therefore rejects Petitioner's allegation that his inculpatory statement was involuntary due to the delay in his arraignment.

The totality of the circumstances supports a finding that Petitioner's statement was voluntary.  Because his  statement was voluntary, trial counsel's failure to challenge the admissibility of Petitioner's statement did not amount to ineffective assistance.  *McCalvin v. Yukins*, 444 F.3d 713, 718 (6th Cir. 2006).

### C. Prejudice

Even if the Court were to assume that defense counsel's performance was deficient, the allegedly deficient performance did not prejudice the defense. Although Petitioner argues that the State needed his confession to identify him as the shooter,  Eric Owens identified Petitioner at trial as the person who approached Arnado Wilkins, pulled a handgun from his waistband, and shot Arnado.  Petitioner's confession therefore was not needed to identify him as the shooter.  Additionally, Petitioner's trial testimony was similar to his handwritten confession to Officer Shea. There is not a reasonable probability that the result of the trial would have been different had counsel successfully moved to suppress Petitioner's confession that he shot and killed Arnado Wilkins.

Finally, the trial court stated at the evidentiary hearing that it would have denied a motion to suppress had trial counsel filed one. For this additional reason, Petitioner was not prejudiced by counsel's alleged error. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 865 (E.D. Mich. 2003).

## V.  CONCLUSION

The state appellate court's conclusion that trial counsel was not ineffective was not contrary to, or an unreasonable application of, *Strickland*. The state court's decision also did not amount to an unreasonable application of the facts. Habeas relief, therefore, is not warranted. The Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus (Docket No. 1, filed February 24, 2011).

## VI.  DENIAL OF A CERTIFICATE OF APPEALABILITY; GRANT OF *IN FORMA PAUPERIS* STATUS ON APPEAL

Before Petitioner may appeal this decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met if Petitioner can demonstrate that reasonable jurists would find the Court's assessment of his claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

24

Petitioner must demonstrate " ' a substantial showing of the denial of a constitutional right' " and that his claim is "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (quoting 28 U.S.C. § 2253(c)(2)).

Having conducted the requisite review, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court **DECLINES** to issue a certificate of appealability. Petitioner nevertheless may proceed *in forma pauperis* on appeal if he chooses to appeal this decision, because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED**.

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Dated: November 25, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, November 25, 2013 , by electronic and/or ordinary mail.

s/ Richard Loury for LaShawn R. Saulsberry
Case Manager and Deputy Clerk

25